Ross **BURNINGHAM**, Plaintiff,

v.

**UTAH POWER & LIGHT COMPANY,** a division of PacifiCorp, Defendant and Third–Party Plaintiff,

v.

**Ronald W. Lamb, Third–Party, Defendant.**

No. 194CV104B.

United States District Court, D. Utah, Central Division.

Sept. 23, 1999.

George Diumenti, Bountiful, UT, for plaintiff.

Steven Nebeker, Salt Lake City, UT, for defendant.

## MEMORANDUM OPINION & ORDER

BENSON, District Judge.

### BACKGROUND

On June 25, 1990, plaintiff, Ross Burningham, was electrocuted when attempting to attach several lights to defendant Utah Power & Light's (UP & L's) power pole, which was located adjacent to Ronald Lamb's residential property in Bountiful, Utah. Plaintiff, an electrician by trade, was setting up lights as a favor for a friend's wedding that was to be held on Lamb's property. Plaintiff had permission from Lamb to be on his property, but he neither obtained permission from UP & L to climb on the power pole nor notified UP & L that he would be conducting work on the power pole. The power pole was labeled "Utah Power & Light Co.," and plaintiff was aware that the pole belonged to the defendant. In his efforts to attach the lights to the pole, plaintiff climbed up a ladder that he leaned against the power pole. Plaintiff was near the top of the approximately twenty-five-foot pole when plaintiff came in contact with a 7200 volt power line, causing serious injury to the plaintiff.

Plaintiff filed this action, and defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The Court heard oral argument on September 14, 1999. Argument was presented by Steven Nebeker for the defendant and by George Diumenti for the plaintiff. After listening to the arguments advanced by both sides, the Court took defendant's motions under advisement.

Based on UP & L's motion, the memoranda submitted by both parties, and the arguments presented during oral argument, the Court makes the following findings and issues this Memorandum Opinion and Order.

### DISCUSSION

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir.1991). The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

■ Defendant argues that as a matter of law plaintiff cannot prevail because plaintiff cannot present a prima facie claim for negligence against UP & L. Defendant premises its argument on the contention that UP & L owed no duty to the plaintiff because he was trespassing on the defendant's personal property. Regarding the duty owed by a possessor of land to a trespasser, the Utah Supreme Court has adopted Section 333 of the Restatement (Second) of Torts, which states in relevant part: "a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care (a) to put the land in a condition reasonably safe for their reception, or (b) to carry on his activities so as not to endanger them." *Schlueter v. Summit County, Town of Kamas,* 25 Utah 2d 257, 480 P.2d 140, 142 (1971) (quoting Restatement (Second) of

Torts § 333 (1965)). In other words, "[i]ntruders who come upon the land of another without his approval have no right to demand that the landowner provide them a safe place to trespass." *Id.*

Plaintiff argues that Section 333 should not apply and that he was not a trespasser because he had permission to be on Lamb's property and UP & L did not have any ownership interest in, or possessory rights to, the land on which the incident occurred. Thus, plaintiff argues that defendant should not be afforded "possessor" protection under the law. This argument misses the point. Trespassing is trespassing, regardless of whether it is on real or personal property. *See Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145, 149 n. 4 (1991) (holding that "the same rules [governing trespasses on real property] apply to unauthorized entries onto personal property which is capable of being trespassed upon") (citing *Torres v. Southern Pacific Transp. Co.,* 584 F.2d 900, 902–03 (9th Cir.1978)). It is irrelevant whether plaintiff had permission to be on Lamb's property. Plaintiff became a trespasser when he climbed on defendant's personal property without first obtaining permission to be on the power pole. *See id.* (holding that "when the plaintiff left the ground and began climbing the tower he exceeded the scope of any invitation or license he may have had to be upon the park grounds and became a trespasser"). Accordingly, while Section 333 specifically applies to

owners of real property rather than owners of personal property, the spirit and purpose of Section 333, as adopted by the Utah Supreme Court, is applicable to the case at bar.[1]

Several courts have allowed plaintiffs to present their individual cases to a jury when faced with the task of determining whether a trespasser or "technical trespasser" can recover from the defendant on whose property they were injured. *See, e.g., Brigham v. Moon Lake Elec. Ass'n,* 24 Utah 2d 292, 470 P.2d 393 (1970) (allowing plaintiff that came in contact with downed power poles to recover from defendant); *Texas–Louisiana Power Co. v. Webster,* 127 Tex. 126, 91 S.W.2d 302 (1936) (allowing plaintiffs who came in contact with sagging power lines to recover from defendant). *But see, e.g., Maffucci v. Royal Park Ltd. Partnership,* 243 Conn. 552, 707 A.2d 15 (1998) (preventing recovery by plaintiff who was stealing copper wire from a switchgear cabinet); *Huffman v. Appalachian Power Co.,* 187 W.Va. 1, 415 S.E.2d 145 (1991) (finding that a plaintiff climbing on a transmission tower could not recover from the defendant). These cases turn on factual distinctions based on the conditions surrounding the trespass and are distinguishable from the instant facts. In each of the cases allowing a recovery, it was reasonable to label the plaintiff a "technical trespasser," meaning one who inadvertently comes in contact with electrical wires. These persons, such as the plaintiff in *Brigham v. Moon Lake*

1. Plaintiff contends that the Court should apply Section 386 of the Restatement rather than Section 333. Section 386 reads:

 Any person, except the possessor of land or a member of his household or one acting on his behalf, who creates or maintains upon the land a structure or other artificial condition which he should recognize as involving an unreasonable risk of physical harm to others upon or outside of the land, is subject to liability for physical harm thereby caused to them, irrespective of whether they are lawfully upon the land, by the consent of the possessor or otherwise, or are trespassers as between themselves and the possessor.

 Restatement (Second) of Torts § 386 (1965). The Court finds that Section 386 was intended to apply to different situations than the instant case. Section 386 simply stands for the proposition that a nonpossessor of land cannot immunize itself against liability because of the trespass by a plaintiff on a third party's land. Based on the Court's finding that Section 333 is applicable and that the plaintiff was trespassing on UP & L's power pole, any further analysis under Section 386 is unnecessary. Furthermore, the Court does not find that the power pole posed an unreasonable risk of physical harm in the instant case, as required by Section 386.

*Electrical Association,* should not be foreclosed from bringing a suit. On the other hand, the deliberate trespasser, such as the plaintiff in *Huffman v. Appalachian Power Company,* should not be allowed to thrust himself in the face of danger and subsequently hold a defendant liable for the result of his own actions.

Although not factually on all fours with the case at bar, the Court finds the Utah Supreme Court's reasoning in *Brigham v. Moon Lake Elec. Ass'n* particularly helpful. In that case, one of the defendant's power poles had fallen down so that a high-voltage wire was exposed near the ground where a ten-year-old boy was injured when he passed underneath the wire. Addressing the standard of care owed by a supplier of electricity, the court stated:

> [A] high degree of duty is upon one who transmits electricity in high tension wires to see that no harm befalls a person *rightfully in proximity thereto* when that person is himself guilty of no wrongdoing. In other words the highest degree of care must be used to prevent harm from coming to others.
>
> This does not mean that one who supplies electricity to the public is strictly liable without regard to fault, as may be the case of one who keeps a wild and ferocious animal. The reason for the distinction lies in the use to which the dangerous thing is to be put. Our civilization could not exist without electricity, and those who supply it are benefactors to mankind. Therefore, the high degree of care may be said to be reasonable care in view of the great potential danger involved.

*Brigham,* 470 P.2d at 395 (emphasis added and footnotes omitted). *See also Godesky v. Provo City Corp.,* 690 P.2d 541, 548 (Utah 1984) (quoting *Brigham* with approval). In the instant case, it cannot be said that plaintiff was "rightfully in proximity" to the power lines when he was near to top of UP & L's power pole. Indeed, plaintiff's contact with the electricity and proximity to the source of the electricity was due solely to the fact that he was trespassing on defendants's power pole.

Thus, the Court finds that plaintiff was a trespasser. It is undisputed that plaintiff knew that the power pole belonged to UP & L and that it was indeed an electrical pole. As an electrician, plaintiff should have known the risk involved in climbing up the power pole. Nevertheless, plaintiff proceeded to climb up the power pole without consulting UP & L. As a result of this trespass, the plaintiff was not "rightfully in proximity" to the power lines that electrocuted him. Accordingly, as prescribed by Section 333 of the Restatement, defendant had no duty to Ross Burningham under the circumstances, and consequently UP & L is not liable for the physical harm plaintiff sustained while trespassing on defendant's power pole.

The Court notes that its ruling is not so broad that it should be construed that UP & L and other power companies are absolutely immunized from liability for any injuries caused by power poles and power lines on the property of third parties. Rather the Court's holding only extends to situations where a plaintiff knowingly trespasses onto a power pole and is injured as a result of his own trespass and not the negligence of the power company.

## CONCLUSION

For the reasons stated above, the Court finds that defendant UP & L is entitled to summary judgment as a matter of law. Therefore, defendant's Motion for Summary Judgment is GRANTED.